159 N.J. Super. 417 (1978)
388 A.2d 272
JAMES J. SHEERAN, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, INC. AND NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, INC., CORPORATIONS OF THE STATE OF OHIO, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 20, 1978.
*419 Mr. Wesley S. Caldwell, III, Deputy Attorney General, for plaintiff (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
Mr. Eugene M. Haring for defendants (Messrs. McCarter and English, attorneys).
MORTON I. GREENBERG, J.S.C.
Plaintiff Commissioner of Insurance of New Jersey brought this action on March 1, 1978 against defendants Nationwide Mutual Insurance Company, Inc. and Nationwide Mutual Fire Insurance Company, related Ohio companies authorized to do business in New Jersey (together hereinafter, Nationwide). The complaint set forth that Nationwide determined on October 13, *420 1977 to terminate its fire and casualty business in New Jersey. In furtherance of this plan its agency contracts were to be canceled as of September 30, 1978. Plaintiff further alleged that on or about December 19, 1977 Nationwide forwarded a form letter to each of its agents with an enclosed agreement to be signed releasing the agency obligations and that most Nationwide agents accepted the agreement. It was further claimed that Nationwide on February 2, 1978 started nonrenewing commercial policies and that it intended not to renew other fire and casualty policies as well. Plaintiff stated that Nationwide was violating its obligations under N.J.S.A. 17:22-6.14a which requires that a carrier, upon termination of an agency, continue to offer certain renewal options to the insureds for a period of nine months beyond the agency termination. On March 2, 1978 the court, after a hearing, issued a temporary restraining order barring defendant from sending notices of nonrenewal unless the insureds were advised that Nationwide would renew if the insured had not obtained satisfactory replacement coverage in the voluntary market.
On March 9, 1978 plaintiff filed an amended verified complaint alleging that defendant, in indicating that it would not renew automobile policies, was violating N.J.S.A. 39:6A-3, the New Jersey Automobile Reparation Reform Act (hereinafter, the No Fault Act), and N.J.A.C. 11:3-8.1, a regulation implementing the statute. Thereafter the matters set forth in the original complaint were settled, leaving for determination the issues set forth in the amendment. The parties agree that there are no disputes of material fact and that the matter is ripe for summary disposition. See N.J.S.A. 17:32-20. The trial on April 18, 1978 was thus limited to arguments of law. Nationwide has stated that notwithstanding the withdrawal it does not intend to surrender its certificate of authority to do business in New Jersey. N.J.S.A. 17:32-2 (d). Apparently retention of the certificate is a convenience in servicing large national accounts.
*421 N.J.S.A. 39:6A-3, after requiring that every owner or registered owner of an automobile maintain liability insurance, provides:
No licensed insurance carrier shall refuse to renew the required coverage stipulated by this act without the consent of the Commissioner of Insurance.
It will be noted that while N.J.S.A. 39:6A-3 announces no express standards for the Commissioner in determining whether to consent to the refusal to renew, N.J.S.A. 39:6A-19 authorizes him "to prescribe, adopt, promulgate, rescind and enforce such reasonable rules and regulations as may be required to effectuate the purposes of this act." The Commissioner has adopted N.J.A.C. 11:3-8.1 (e) which includes ten grounds of nonrenewal, the last of which is as follows:
Request by producer of record not to renew policy, provided such request is accompanied by a true statement by the producer that he has replaced like coverage at approved rates in the voluntary market with an admitted carrier, specifying the name of the carrier; provided also that the transferor carrier has advised the insured in writing of his right to renewal in the same company before obtaining the insured's consent to transfer, and of the insured's right to renew if he or she is cancelled by the new carrier for reasons other than nonpayment or suspension or revocation of registration or driver's license. The producer's request for nonrenewal shall be made no later than 90 days prior to the expiration of the policy and a copy thereof shall be sent by the producer to the named insured. A nonrenewal based on such request shall be invalid and the company shall renew the policy at the request of the insured through an active agent and/or broker, or directly if the replacement policy is cancelled by the carrier for any reason other than the reasons allowed for cancellation by N.J.S.A. 17:29C-7 (nonpayment of premium or suspension or revocation of registration or driver's license). [N.J.A.C. 11:3-8.1(e) (11)]
The regulation further provides that failure of a terminated agent to request renewal within the nine months from the effective date of termination, as provided in N.J.S.A. 17:22-6.14a, shall be construed as a request not to renew. N.J.A.C. 11:3-8.1(f).
*422 The initial matter for decision involves statutory and administrative regulation construction and the interplay between N.J.S.A. 39:6A-3 and N.J.S.A. 17:22-6.14a. Nationwide contends that insureds with policies in New Jersey in satisfaction of the requirements of N.J.S.A. 39:6A-1 et seq. not otherwise subject to nonrenewal may be nonrenewed by reason of the withdrawal of Nationwide from New Jersey, their rights being limited to the short-term rights under N.J.S.A. 17:22-6.14a above discussed. Nationwide argues that N.J.S.A. 11:3-8.1 was not intended to apply when the insurer was eliminating a line of coverage but rather was aimed at a situation where the insurer was canceling a particular policy or group of policies arbitrarily and without just cause, though remaining generally in the automobile insurance business.
The court holds that the regulation should be construed as written. Nothing in N.J.S.A. 39:6A-3 makes any suggestion that the obligation of the carrier to the insured is dependent upon the continuation of an agency relationship. It was the intention of the Legislature that an insured have the advantage of guaranteed renewals of indefinite duration with a particular company so long as that company was a licensed insurance carrier. While it is true that N.J.S.A. 17:22-6.14a authorizes a carrier, subject to certain limited renewal obligations, to terminate an insured upon cancellation of an agency servicing the insured, that section is general in nature and is not particularly addressed to automobile insurance. A general provision of law should yield in the event of an inconsistency to a specific section. Kingsley v. Wes Outdoor Advertising Co., 55 N.J. 336 (1970).
It should be further noted that the regulation indicates that the carrier may decline to renew only if there is evidence of availability of like coverage in the voluntary insurance market. Thus, while N.J.A.C. 11:3-8.1(f) does indicate that the failure by the terminated agent to request renewal shall be construed as a request *423 not to renew, such a request is simply not effective to justify a nonrenewal unless accompanied by evidence of substituted coverage. The court sees no reason why it should hold that the carrier and its agent can impair the important right of the insured to continued coverage. Surely the Legislature, by N.J.S.A. 39:6A-3, intended to protect the insured, not the agent. See New Jersey Builders, etc., Ass'n v. Blair, 60 N.J. 330, 338 (1972). Thus, the regulation must be read to require that the insured be given renewal options indefinitely unless there is another basis to nonrenew.
Nationwide further contends that in the event that the statute and regulation do not permit termination of the otherwise required coverage under the No Fault Act, the absence of standards renders the statute void as constituting an unlawful delegation of legislative authority. It is true that N.J.S.A. 39:6A-3 contains no express standards. But it is also true, as already noted, that the statute requires that any regulation adopted be reasonable. N.J.S.A. 39:6A-19. Within the context of a mandatory requirement to continue insurance coverage a reasonable regulation clearly implies that the Commissioner take into account the risk to the carrier from being required to continue coverage for the particular insured. The provisions of the statute should be reasonably construed to mean that the regulation carry out a function of permitting a carrier to withdraw coverage from certain high risk or uncooperative insureds. See Avant v. Clifford, 67 N.J. 496, 552-53 (1975); Atlantic City Electric Co. v. Bardin, 145 N.J. Super. 438 (App. Div. 1976). In N.J.A.C. 11:3-8.1(e) the Commissioner has reasonably carried out the intention of the Legislature.
Defendant further argues that the requirement of renewal of coverage constitutes an unconstitutional impairment of the contract between the carrier and its insured. U.S. Const., Art. I, § 10; N.J. Const. (1947), Art. IV, § VII, par. 3. The No Fault Act has been completely effective since January 1, 1973. L. 1972, c. 70, § 19. Possibly *424 a carrier could have argued that there was no obligation to renew an insurance contract in force before the effective date of the act and which expired after the said date. See Superior Motors, Inc. v. Winnebago Industries, Inc., 359 F. Supp. 773 (D.S. Car. 1973); Consumers Oil Corp. v. Phillips Petroleum Co., 488 F.2d 816 (3 Cir.1973). However, it appears that the automobile policies written by Nationwide now in force were all written after January 1, 1973. Consequently the statute and implementing regulation should be treated as a portion of the policies. See Saffore v. Atlantic Cas. Ins. Co., 21 N.J. 300 (1956); Red Bank Bd. of Ed. v. Warrington, 138 N.J. Super. 564, 568-69 (App. Div. 1976). Since even the common law recognized under some circumstances an obligation to renew a contract which would otherwise expire, Shell Oil Co. v. Marinello, 63 N.J. 402 (1973), cert. den., 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974), the court holds that in the highly regulated insurance industry so greatly affected with the public interest that there is no reason why the intention of the Legislature as adopted by the parties should not be carried out. The court further notes the disproportionate bargaining power between the carrier and the insured. See Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94 (1968). Surely it was reasonable for the Legislature to require this protection for the insured.
It is further argued that the statute, if construed to require a continuation of Nationwide in the automobile insurance market, is unconstitutional as depriving it of its property without due process of law. It is alleged that the business is unprofitable. The answer to this contention is that the remedy lies not in withdrawal from the market but rather in the application to the Commissioner for increased rates. Unquestionably Nationwide has a right to a reasonable profit, and if its allegations with respect to its inability to obtain a reasonable rate structure are true, it surely has a remedy in the courts. N.J.S.A. 17:29A-11; *425 In re Insurance Rating Bd., 55 N.J. 19 (1969), 63 N.J. 413 (1973).
Finally, it is argued that the Legislature has imposed an unconstitutional condition upon the right of Nationwide to hold its certificate of authority in New Jersey, the condition being the requirement to continue to renew certain automobile business. This argument is without force since the condition is valid. Further, it is surely appropriate in a state imposing substantial penalties for operation of a vehicle without insurance to require that a carrier not abandon a reasonable risk. See N.J.S.A. 39:6A-15(b).
Therefore the court finds that with respect to existing policies written by Nationwide pursuant to N.J.S.A. 39:6A-1 et seq. the mandatory renewal provisions of N.J.S.A. 39:6A-3 as implemented by N.J.A.C. 11:3-8.1 apply. The court will enter a final judgment enjoining defendants from violation of the statute.